**Bruce A. WILLIAMS, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO; Timothy R. Kunau, d/b/a Kunau Drilling; and Pinnacol Assurance, Respondents.**

No. 04CA2192.

Colorado Court of Appeals, Div. IV.

Jan. 12, 2006.

Spencer & Spencer, P.C., Patrick C.H. Spencer, II, Colorado Springs, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Brandee DeFalco Galvin, Denver, Colorado, for Respondents Timothy R. Kunau and Pinnacol Assurance.

Opinion by Judge RUSSEL.

This is a workers' compensation case. Bruce A. Williams (claimant) seeks review of the final order of the Industrial Claim Appeals Office (Panel), which ruled in favor of Timothy R. Kunau and Pinnacol Assurance (collectively employer). We affirm.

## I. Background

In 1996, claimant suffered a back injury while working for Kunau. He was referred to an authorized treating physician. After several months, the treating physician found that claimant had achieved maximum medical improvement. The physician assigned an impairment rating of twenty-four percent.

Thereafter, claimant was incarcerated.

In 2000, claimant was released from prison and underwent a division-sponsored independent medical examination (IME). The IME physician determined that claimant was no longer at maximum medical improvement and recommended that his case be reopened. Employer contested this determination before an administrative law judge (ALJ). The ALJ upheld the IME determination and ordered employer to pay temporary disability benefits. Claimant was then referred to another treating physician.

In August 2002, claimant's treating physician placed him at maximum medical improvement and assigned an impairment rating of twenty-four percent. Employer filed a final admission of liability in accordance with the physician's rating. Employer also asserted that claimant had reached the benefits cap set forth in § 8–42–107.5, C.R.S.2005.

Claimant promptly objected to the final admission of liability, but he did not properly request another IME to contest the treating physician's findings. Instead, he brought an action to contest employer's assertion that he had reached the statutory benefits cap. Claimant prevailed in that action.

In November 2003, claimant requested an IME so that he could contest the treating physician's findings regarding maximum medical improvement and the impairment rating. Employer argued that those issues were closed because claimant's request was outside the thirty-day time limit imposed by § 8–42–107.2(2)(b), C.R.S.2005.

The ALJ agreed with employer. On review, the Panel affirmed the ALJ's ruling.

## II. Thirty–Day Limit

■ Claimant contends that he was exempt from the thirty-day limit because he

was requesting a follow-up examination. In claimant's view, § 8–42–107.2(2)(b) applies only when a party requests an IME in the first instance. We disagree.

### A. IME Statute

Section 8–42–107.2(2)(b) sets forth the procedure by which a party may obtain an IME:

If any party disputes a finding or determination of the authorized treating physician, such party shall request the selection of an IME. The requesting party shall notify all other parties in writing of the request, on a form prescribed by the division by rule, and shall propose one or more acceptable candidates for the purpose of entering into negotiations for the selection of an IME.... Unless such notice and proposal are given within thirty days after the date of mailing of the final admission of liability ... the authorized treating physician's findings and determinations shall be binding on all parties and on the division.

Claimant asserts that § 8–42–107.2(2)(b) serves but one purpose—to begin the process of selecting the IME physician. He argues that this provision does not apply to follow-up examinations because those examinations are generally performed by the physician who conducted the initial IME.

We disagree for three reasons.

First, § 8–42–107.2(2)(b) contains no evidence of legislative intent to exempt follow-up examinations from the statutory requirements. The provision states that notice and a proposal must be submitted within thirty days when "any party disputes a finding or determination of the authorized treating physician." Follow-up examinations fall within the scope of this language; they occur when a party disputes the findings of a treating physician after an initial IME has been conducted.

Second, contrary to claimant's argument, § 8–42–107.2(2)(b) does not exist solely for the purpose of selecting an IME physician. By requiring parties to submit notice and a proposal within thirty days, the provision also serves to expedite the resolution of disputes. Claimant's interpretation would undermine this purpose because it would allow

some parties to dispute the findings of a treating physician long after the fact, without any time limit.

Third, claimant's position is contrary to the interpretation of the agency that administers the workers' compensation statutes. *See Ager v. Pub. Employees' Ret. Ass'n Bd.*, 923 P.2d 133, 137 (Colo.App.1995) (courts generally defer to the interpretation of a statute by the agency charged with its administration).

In February 2004, the Director of the Division of Workers' Compensation issued an "Interpretive Bulletin" that addressed the process by which follow-up examinations may be obtained. In pertinent part, the bulletin indicates that parties must request a follow-up examination within thirty days:

So, when this fact pattern occurs and MMI is determined for the second time, if the carrier agrees with the rating the carrier must file a new Final Admission consistent with that rating. If the carrier does not agree it would be required to contact the IME unit in writing to schedule a follow-up examination pursuant to Rule XIV(L)(7). The carrier must take one of these actions within 30 days. If the carrier issues a new Final Admission and the claimant does not dispute the benefits admitted, the IME unit should be notified so the DIME can be closed and no further action is necessary. *If the claimant disagrees with the second Final Admission, he or she has 30 days to object and also to contact the IME unit in writing to schedule a follow-up examination.*

(Emphasis added.)

The division's interpretation comports with the statutory language and advances the legislature's underlying purposes. The interpretation does not place an unreasonable burden on any party. A party may discharge its statutory obligation (1) by providing written notice of a request for a follow-up examination by the original IME physician, or (2) by providing notice and a proposal for the selection of a new IME physician:

If a Level II IME physician determines a claimant has not reached MMI and recommends further treatment or return for

range of motion validation, a follow-up IME examination shall to the extent possible be scheduled with the original IME physician. The party requesting the follow-up appointment shall provide written notification of such request to the Division's IME section, with a copy to the other party.

A new IME physician may be selected only if agreed on by both parties. The parties shall have reached prior agreement on who shall pay the $675.00 to the new IME physician prior to the patient visit. Upon good cause shown, an administrative law judge may also order a new physician and designate which party shall pay the examination fee.

Absent both party [sic] agreement or an order from an administrative law judge, the party requesting the follow-up shall pay any additional examination expense.

Dep't of Labor & Employment Rule XIV(L)(7), 7 Code Colo. Regs. 1101–3.

We therefore conclude that § 8–42–107.2(2)(b) governs both initial IMEs and follow-up examinations.

### B. *Stefanski v. Industrial Claim Appeals Office*

We recognize that our conclusion conflicts with a recent opinion by another division of this court.

In *Stefanski v. Industrial Claim Appeals Office*, 128 P.3d 282, 2005 WL 2155248 (Colo. App. No. 04CA1296, Sept. 8, 2005), the division held that § 8–42–107.2(2)(b) applies only to first-time IMEs. In reaching this conclusion, the division relied on language found in subsection six of the IME statute:

This section was enacted by House Bill 98–1062, as enacted at the second regular session of the sixty-first general assembly, as a remedial statute and is procedural in nature. The purpose of this section is to improve and simplify remedies already existing for the enforcement of rights and the redress of injuries under the workers' compensation laws of Colorado. This section effected procedures related to the selection of an IME and *shall be applicable to all open cases with a date of injury on or after July 1, 1991, for which a division IME has not been requested,* pursuant to section 8–42–107.

Section 8–42–107.2(6), C.R.S.2005 (emphasis added).

The *Stefanski* division concluded that this language plainly limited § 8–42–107.2 to first-time requests for division IMEs. We disagree with that conclusion.

The general assembly enacted subsection six of the IME statute so that the new procedures effected by § 8–42–107.2 would be applied retroactively. *See Lobato v. Indus. Claim Appeals Office,* 105 P.3d 220, 224 (Colo.2005). Because it would not have been reasonable or practical to apply the new procedures to cases in which an IME physician had already been selected, the legislature exempted certain cases from retroactive application.

■ This exemption is expressed in the last sentence of subsection six. It includes the language on which the *Stefanski* division relied. Viewed in the context of the entire provision, this language can only be understood to mean that, in cases then pending, § 8–42–107.2 would not retroactively govern the selection of an IME physician if a physician had already been requested under the old procedures. *See Tidwell v. City & County of Denver,* 83 P.3d 75, 82 (Colo.2003) (court must look at the entire statute to interpret the meaning of a specific clause).

Thus, contrary to the division in *Stefanski,* we conclude that subsection six contains no evidence of legislative intent to limit § 8–42–107.2 to first-time IME requests. *See In re Estate of Becker,* 32 P.3d 557 (Colo.App.2000) (one division of this court is not obliged to follow precedent established by another division), *aff'd sub nom. In re Estate of DeWitt,* 54 P.3d 849 (Colo.2002).

We therefore agree with the Panel that claimant was required to file his request for a follow-up examination within thirty days of the treating physician's findings.

### III. Due Process

■ Claimant next contends that requiring him to request a follow-up examination and pay the related fee would violate his

right to due process. We conclude that claimant has failed to preserve this argument.

Claimant's due process argument is an as-applied challenge to the workers' compensation scheme. In effect, claimant asserts that, as applied to him, the workers' compensation scheme imposes an undue financial burden on his right to be heard. *See Whiteside v. Smith*, 67 P.3d 1240, 1256–59 (Colo.2003) (Coats, J., concurring).

This argument is plausible. Although indigents are not required to advance the cost of an IME, *see* § 8–42–107.2(5)(b), C.R.S.2005; *Whiteside v. Smith, supra*, other claimants generally must pay the full cost. *See* § 8–42–107.2(5)(a), C.R.S.2005 (the requesting party must advance the full cost of the examination). The cost is currently $675 for each examination. Dep't of Labor & Employment Rule XIV(L)(4)(a), 7 Code Colo. Regs. 1101–3. Were a claimant required to undergo a series of follow-up IMEs, this fee could become an insurmountable barrier to legal process.

Here, however, the record does not establish that claimant was financially precluded from requesting the follow-up IME:

- Claimant did not ask employer to bear the cost of the follow-up IME, nor did he ask the ALJ to order employer to bear the cost. *See* Rule XIV(L)(7), 7 Code Colo. Regs. 1101–3.
- Claimant did not ask to be excused from having to request a follow-up IME on the ground that he was financially unable to pay the fee. Instead, he stated that he was not seeking a follow-up IME because he thought it necessary first to challenge employer's reliance on the statutory benefits cap.

- Claimant did not present his as-applied challenge to the ALJ or the Panel.

Under the circumstances, we conclude that claimant did not preserve his as-applied due process claim. *See Horrell v. Dep't of Admin.*, 861 P.2d 1194, 1198 & n. 4 (Colo.1993) (although the administrative agency has no authority to decide whether acts are facially unconstitutional, it may evaluate whether an otherwise constitutional statute has been unconstitutionally applied); *see also Malecon Tobacco, LLC v. State ex rel. Dep't of Taxation*, 118 Nev. 837, 59 P.3d 474 (2002) (as-applied challenge dismissed where plaintiff's failure to exhaust administrative remedies deprived courts of necessary factual determinations).

The order is affirmed.

Judge CARPARELLI concurs.

Judge STERNBERG * dissents.

Judge STERNBERG dissenting.

While I recognize that the issue presented in this case is close, primarily because of ambiguity in the statutory language, I respectfully dissent from the majority's opinion. I would reverse the Panel's order for the reasons stated in *Stefanski v. Industrial Claim Appeals Office*, 128 P.3d 282, 2005 WL 2155248 (Colo.App. No. 04CA1296, Sept. 8, 2005).

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.