Bruce A. WILLIAMS, Petitioner

v.

Timothy R. KUNAU, d/b/a Kunau Drilling; Pinnacol Assurance; and the Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 06SC93.

Supreme Court of Colorado, En Banc.

Nov. 6, 2006.

Spencer & Spencer, P.C., Patrick C.H. Spencer, II, Colorado Springs, Colorado, Attorneys for Petitioner.

Alexander and Ricci, P.C., William A. Alexander, Jr., Colorado Springs, Colorado, Attorneys for Petitioner.

Pinnacol Assurance, Harvey D. Flewelling, Denver, Colorado, Attorneys for Respondents, Pinnacol Assurance and Timothy R. Kunau, d/b/a Kunau Drilling.

John W. Suthers, Attorney General, Vincent E. Morscher, Assistant Attorney General, Civil Litigation and Employment Law Section, Denver, Colorado, Attorneys for Respondent, Industrial Claim Appeals Office.

Ritsema & Lyon, P.C., T. Paul Krueger II, Denver, Colorado, Attorneys for Amicus Curiae Colorado Self Insurers Association.

Pepe J. Mendez and Associates, P.C., Michelle L. LaForett, Denver, Colorado, Attorneys for Amicus Curiae Workers Compensation Education Association.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in this workers' compensation case to review the court of appeals' decision in *Williams v. Industrial Claim Appeals Office,* 128 P.3d 335 (Colo. App.2006). This case concerns whether, following a determination by an independent medical examiner that a claimant has not reached maximum medical improvement ("MMI"), an employer or insurer may close the case by filing a final admission of liability ("FAL") when the treating physician determines a second time that the claimant has reached MMI, or whether the employer or insurer must return the claimant to the independent medical examiner for a follow-up examination and determination of MMI prior to filing an FAL.[1]

In this case, Williams' treating physician made a finding of MMI. Williams requested and underwent a Workers' Compensation Division independent medical exam ("DIME")

---

1. We granted certiorari on the following issue: Whether, in cases where a claimant has successfully challenged an initial maximum medical improvement rating through the Division independent medical exam ("DIME") process, the claimant must request a follow-up DIME in accordance with sections 8–42–107 and 8–42–107.2 in order to challenge a subsequent MMI rating.

resulting in the independent medical examiner determining that he was not at MMI. Williams received further treatment and the treating physician concluded that he was at MMI. The insurer, Pinnacol Assurance ("Pinnacol"), filed an FAL that included an assertion that he had exceeded the $60,000 statutory benefits cap. Williams objected to the FAL and sought a hearing at which he received an Administrative Law Judge ("ALJ") determination that he had not reached the benefits cap. The employer then filed a revised FAL to incorporate the ALJ's finding. The ALJ ruled that Williams had not timely reinitiated the DIME process within thirty days of when Pinnacol filed its FAL; thus, the case was automatically closed pursuant to section 8–42–107.2(2)(b), C.R.S. (2006).

Williams argues that the procedures required by section 8–42–107.2(1)(b), C.R.S. (2006) to select the independent medical examiner, including the time limit following the employer's or insurer's filing of an FAL, do not apply to a follow-up examination by an independent medical examiner after the treating physician's second determination of MMI. We agree.

We hold that, once a claimant has successfully challenged a finding of MMI through the DIME process, the DIME process remains open and, when the treating physician makes a second finding of MMI, the employer or insurer may not file an FAL to close the case prior to returning the claimant to the independent medical examiner for a follow-up examination and determination of MMI. Accordingly, we reverse the judgment of the court of appeals.

## I.

In June 1996, Williams injured his back at his drilling job. Williams improved over the weekend, but upon returning to work on Monday, his back pain increased to such severity that he visited the emergency room. Williams attempted to continue working on light duty but was eventually laid off.

Williams received physical therapy as well as other treatment through workers' compensation, but his range of motion remained limited. Pain interrupted his sleep and prevented him from sitting or standing in one position for any length of time.

Williams was incarcerated from April 17, 1998, to May 11, 2000, and underwent treatment for his back pain during his incarceration. An authorized treating physician found Williams to be at MMI in May 2000. Williams challenged this finding and underwent a DIME on September 21, 2000, resulting in the independent medical examiner finding that Williams was not at MMI. As a result, the ALJ ordered Pinnacol to pay temporary disability benefits commencing May 12, 2000.

Williams received additional treatment from several other physicians and a chiropractor, reporting no significant improvement in his pain. On August 12, 2002, Williams' treating physician again determined that he had reached MMI.

Pinnacol then filed an FAL on September 3, 2002, admitting liability for temporary benefits through August 11, 2002, and 24 percent permanent impairment benefits. The FAL asserted that Williams had reached the $60,000 cap on benefits and therefore was entitled to no further benefits.

Williams objected to the FAL on September 18, 2002, but he did not reinitiate the DIME process. Instead, he applied for a hearing on the issue of Pinnacol's assertion that he had met the $60,000 cap on benefits. Williams prevailed on this issue.

Pinnacol filed a revised FAL on November 14, 2003, reflecting the ALJ's determination that Williams' benefits were not at the $60,000 benefit cap. Williams objected to the revised FAL and requested that the independent medical examiner redetermine MMI. Pinnacol moved to strike this request as untimely. On June 11, 2004, the ALJ concluded that Williams' request was untimely filed and the claim was closed.

Williams sought review by the Industrial Claim Appeals Office ("ICAO"), arguing that he was not required to reinitiate the DIME process when the initial DIME process had resulted in an independent medical examiner's determination that he was not at MMI. The ICAO affirmed the ALJ's ruling on October 4, 2004.

The Colorado Court of Appeals, citing section 8–42–107.2(2)(b), ruled that the claimant must reinitiate the DIME process within thirty days of when the employer or insurer filed the FAL.

## II.

■ We hold that, once a claimant has successfully challenged a finding of MMI through the DIME process, the DIME process remains open and, when the treating physician makes a second finding of MMI, the employer or insurer may not file an FAL to close the case prior to returning the claimant to the independent medical examiner for a follow-up examination and determination of MMI.

We are primarily concerned in this appeal with three statutes within the Workers' Compensation Act: sections 8–42–107 (rating of injuries and the payment of medical benefits), 8–42–107.2 (selection of the independent medical examiner), and 8–43–203, C.R.S. (2006)(final admission of liability). We find that these statutes, when read together, are ambiguous with respect to the issue on appeal to us, necessitating application of statutory construction principles. Applying these principles, we conclude that the employer or insurer may not file an FAL prior to returning the claimant to the independent medical examiner for a follow-up examination and determination of MMI when the treating physician makes a second determination that the claimant has reached MMI.

## A.

### Standard of Review

■ We review the proper construction of statutes de novo. *Lobato v. ICAO,* 105 P.3d 220, 223 (Colo.2005). We extend deference to the agency's interpretation of its own statutes, but we are not bound by it. *Id.* When the agency's interpretation is not uniform or consistent we do not owe deference to that interpretation; but we can look to alternative statutory construction aids and consider the agency's rationale for consistency with the stated purposes of the Workers'

Compensation Act. *Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 331 (Colo.2004).

■ If statutory language is clear, we apply its plain and ordinary meaning. *Lobato,* 105 P.3d at 223. If the statute is reasonably susceptible to multiple interpretations, it is ambiguous and we determine the proper construction by examining the legislative intent, the circumstances surrounding its adoption, and possible consequences of various constructions. *Id.* at 223–24.

## B.

### The DIME Process

The exclusive remedy available to employees for workplace injuries in Colorado is the Colorado Workers' Compensation Act (the "Act"). § 8–40–102(1), C.R.S. (2006). The remedial purpose of the Act is to provide treatment and compensation to injured workers; this aim is to be accomplished efficiently and at reasonable cost to employers. *Id.*

To provide care to an injured employee under the Act, the employer or the employer's insurer selects an authorized treating physician. § 8–42–107(8)(b). Following this care, the treating physician determines when the employee has reached MMI and the degree of any permanent impairment. § 8–42–107(8)(b)(I). Once the treating physician has determined the claimant to be at MMI, the employer or insurer may file an FAL. § 8–42–107.2(2)(a)(I)(A). Unless the claimant requests the selection of an independent medical examiner within thirty days, the treating physician's findings and determinations are binding on all parties and on the Division. § 8–42–107.2(2)(b).

Thus, if the claimant disagrees with the treating physician's finding of MMI, the claimant may challenge that finding by initiating the selection of an independent medical examiner. *Id.* The employer or insurer may also initiate the selection of an independent medical examiner. §§ 8–42–107.2(2)(a)(I), (b)–(c). The statute provides that the party requesting the DIME must pay the full cost of the examination ten days prior to the date of the exam.[2] § 8–42–107.2(5)(a).

---

2. This cost is $675.

The independent medical examiner examines the claimant and makes an independent finding of the claimant's condition. This finding may only be overcome by clear and convincing evidence. § 8–42–107(8)(b)(III). If the independent medical examiner finds that the claimant is not at MMI, the claimant returns to the treating physician for further treatment.

Applying these provisions, the court of appeals has reached opposite conclusions regarding the meaning of the Act.

## C.

### Conflicting Court of Appeals Decisions

In *Stefanski v. ICAO*, which we also announce today, a division of the court of appeals ruled that the employer or insurer must return the employee to the independent medical examiner for a follow-up examination once the treating physician determines a second time that the employee is at MMI. *Stefanski*, 128 P.3d 282, 284 (Colo.App.2005), *cert. granted*, (Feb. 13, 2006) (No. 05SC814), 2006 WL 391932.

In the *Williams* case now before us, a different division ruled in comparable circumstances that it is the employee's obligation to reinitiate the DIME process when the employer or insurer files an FAL to close the case. *Williams*, 128 P.3d at 338. This division recognized that "our conclusion conflicts with a recent opinion by another division of this court." *Id.* The dissent would have followed *Stefanski*. *Id.* at 339 (Sternberg, J., dissenting).

The *Stefanski* division of the court of appeals relied on subsection six of the statute, which states in pertinent part:

The purpose of this section is to improve and simplify remedies already existing for the enforcement of rights and the redress of injuries under the workers' compensation laws of Colorado. This section effected procedures related to the selection of an [independent medical examiner] and shall be applicable to all open cases with a date of injury on or after July 1, 1991, *for which*

*a division IME has not been requested,* pursuant to section 8–42–107.

§ 8–42–107.2(6) (emphasis added).

The *Stefanski* division held that this language plainly limits the application of section 8–42–107 to an initial request for an independent medical examiner. We disagree that this language controls the outcome of *Stefanski* or *Williams*. Rather, the General Assembly enacted this subsection in order to apply the new procedures for selection of an independent medical examiner retroactively. *See Lobato*, 105 P.3d at 224. The legislature exempted cases where an examiner had already been selected, because it would not be reasonable to apply the new procedures retroactively to these cases. This subsection does not specifically resolve the issue of whether an employer may file an FAL to terminate the case when a treating physician makes a second MMI determination or, instead, must request a follow-up examination by the independent medical examiner.

Although we agree with the *Williams* panel in regard to this criticism of the *Stefanski* panel's rationale, we nonetheless disagree with the *Williams* panel's statutory analysis.

Because our review of the statute's meaning is de novo, we proceed to analyze the statutory provisions pertinent to resolution of this case. Because we conclude that they are ambiguous on the key issue of whether the employer or insurer may file an FAL to close a case when the independent medical examiner has previously determined the claimant not to be at MMI, we apply the rules of statutory construction. Applying those rules, we conclude that the employer or insurer must return the claimant to the independent medical examiner for a follow-up examination and determination of MMI before it may file an FAL to close the case.

## D.

### Analysis

We look first to statutory language. Section 8–42–107(8)(b)(II) authorizes any party who disputes the determination of MMI by the treating physician to request selection of an independent medical examiner pursuant to section 8–42–107.2. The language of this

section of the Act does not expressly address the applicable procedure for a follow-up DIME as opposed to the initial DIME.

Section 8–42–107.2 designates the procedure for the selection of the independent medical examiner when the treating physician first finds that the claimant is at MMI. It does not state that this procedure also applies to cases in which the independent medical examiner, having been selected, determines the claimant not to be at MMI.

Under section 8–42–107(8)(b)(III), the prior finding by the independent medical examiner that the employee had not reached MMI can be overcome only by clear and convincing evidence. The statute does not provide that this finding is overcome or rendered void by the treating physician's second determination that the employee has reached MMI.

Section 8–43–203 supplies the framework for notice to the claimant regarding the employer/insurer's liability in the case. Subsection 8–43–203(2)(b)(II) provides that an admission of final liability must notify the claimant that the case will automatically close unless the claimant contests it, such as through a request for the "selection of an independent medical examiner pursuant to section 8–42–107.2 *if an independent medical examination has not already been conducted.*" (emphasis added).

This language appears to limit the application of section 8–42–107.2's FAL procedure to situations where the claimant has not previously undergone an independent medical exam. Further, this section implies that the proper procedure for FAL closure of the case may be different when an independent medical exam has already been conducted.

Thus, through section 8–43–203(2)(b)(II), the statute contains strong indications that the General Assembly did not intend for the FAL closure process to operate the same way in regard to a second determination of MMI as it does for initiating the DIME in the first instance. Nevertheless, the statute does not include a specific provision enunciating whose responsibility it is to seek the independent medical examiner's follow-up ex-

amination upon the treating physician's second determination of MMI. Thus, the statute is silent or ambiguous on this point.

Our primary task in construing a statute is to give effect to the intent of the General Assembly. *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991). The Act is remedial and beneficent in purpose and should be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families. *Colo. Counties, Inc. v. Davis,* 801 P.2d 10, 11 (Colo.App.1990), *aff'd sub nom. County Workers Comp. Pool v. Davis,* 817 P.2d 521 (Colo.1991). The legislature intended the Act to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers. § 8–40–102. The legislature also intended that the DIME provisions would improve and simplify the workers' compensation process. § 8–42–107.2(6); *Lobato,* 105 P.3d at 224.

The parties to this case are in direct conflict as to the process most in accord with the General Assembly's purposes. Under the principles of statutory construction, we may defer to an agency's interpretation of its statute, but we are not bound by it. *Lobato,* 105 P.3d at 223. We consider the agency's rationale in light of the legislative purposes of the Workers' Compensation Act. *Anderson,* 102 P.3d at 331. If the statute is reasonably susceptible to different interpretations, we may determine the proper interpretation by examining the legislative goals underlying the provision and the consequences of possible alternative constructions. *Lobato,* 105 P.3d at 223–24.

Historically, the Division's policy has been that, after an independent medical examiner determines the employee not to be at MMI, the independent medical examiner must make the final determination of MMI following additional care from the treating physician. *Interpretive Bulletin 11A:* Follow Up Division Independent Medical Examinations (Mar. 6, 2006), *available at* http://www.coworkforce.com/dwc/InterpretiveBulletins/IB11A—Dime.pdf.[3] Under this view of the

---

**3.** The Director of the Division of Worker's Compensation ("Division") issues interpretive bulle-

tins to provide guidance regarding the practical

Act, a second determination of MMI by the treating physician would not have had any binding effect pending the independent medical examiner's follow-up examination, nor would it have been the basis for the filing of an FAL because the DIME process in the case is still open. *Id.*

The ICAO reached the opposite conclusion in *Perales v. Napier Enterprises, Inc.*, W.C. No. 4–516–705 (Dec. 12, 2003). Following that decision, the Director issued Interpretive Bulletin No. 11 in an attempt to reconcile the agency's policy with the rule enunciated by the ICAO. *Interpretive Bulletin 11A.*

After the court of appeals issued its conflicting decisions in *Stefanski* and this case, the Director issued Interpretive Bulletin 11A in an effort to provide some guidance to claimants and insurers. *Id.* The Director first recommended that the parties to a claim work toward reaching an agreement as to how they will proceed. Failing this, the Director confirmed that the Division believed that the better practice is for the employer or insurer to return the claimant to the independent medical examiner for a follow-up DIME, rather than filing an FAL on the basis of a treating physician's second finding of MMI.

We conclude from this history that the Division's preferred interpretation is that, once an independent medical examiner finds that the claimant is not at MMI, the DIME process remains open for final resolution by that independent medical examiner. In support of this position, the Director's concern has been that a claimant may be "whipsawed" back and forth between the independent medical examiner and the treating physician. *Id.* The Director further notes that requiring the claimant to request, and thus pay for, each follow-up DIME could result in an undue financial burden on the claimant.

We agree with the Director's observations as stated in Interpretive Bulletin 11A. The court of appeals' interpretation of the Act in *Williams* would place the onus on the claimant to request and pay for follow-up DIMEs regardless of how many times the treating physician incorrectly places the claimant at MMI. For a claimant who may not be working due to his or her disability, repeated payments of $675 to prove the need for further treatment is a heavy burden. This is contrary to the stated beneficent purpose of the Act.

The legislature directed that the findings of the independent medical examiner "shall be overcome only by clear and convincing evidence." § 8–42–107(8)(b)(III). Permitting an employer or insurer to initiate closing the case through filing an FAL on the basis of the treating physician's second finding of MMI allows the treating physician to overrule the findings of the independent medical examiner. This practice conflicts with the legislature's explicitly-stated deference to the findings of the independent medical examiner, and renders this portion of the statute meaningless. We conclude, as the Director did, that the DIME process remains open and need not be reinitiated by the employee upon the treating physician's second determination of MMI.

We also agree with the Director and the *Stefanski* panel's ruling that, when a claimant has already initiated the DIME process once and, following treatment, the treating physician has again placed the claimant at MMI, an efficient process is for the employer or insurer to promptly return the claimant to the independent medical examiner for a follow-up examination and determination of MMI. The Respondents' view of the Act, which places the burden on the employee to reinitiate the DIME process within thirty days, would also be efficient. But the legislature has not specifically chosen which procedure to require.

Under these circumstances, the statutory ambiguity should be resolved in favor of the employee based on the Act's remedial purpose. Thus, when the treating physician again determines the employee to be at MMI, the parties may stipulate to that fact and the employer or insurer may move directly to filing the FAL instead of returning the employee to the independent medical examiner. In the absence of such a stipulation, because the DIME process remains open and

applications of the Act. The full text of Interpre-    tive Bulletin 11A is attached as an Appendix.

there is no necessity to reinitiate the process, the employer or insurer must return the employee to the independent medical examiner for a follow-up examination and determination of MMI before filing an FAL.

Pinnacol argues that our construction would eliminate statutory deadlines for follow-up independent medical examinations, opening up the possibility that some cases will languish without closing. We do not agree. Employers and insurers have a strong motivation to close the case and end their liability as quickly as possible. We do not anticipate employers and their insurers continuing to pay benefits after a claimant has been placed at MMI without promptly seeking a follow-up examination by the independent medical examiner.

Accordingly, in light of the remedial and efficiency purposes of the Act, we hold that, once a claimant has successfully challenged a finding of MMI through the DIME process, that process remains open and, when the treating physician makes a second finding of MMI, the employer or insurer may not file an FAL to close the case prior to returning the claimant to the independent medical examiner for a follow-up examination and determination of MMI.

## III.

Accordingly, we reverse the judgment of the court of appeals and remand with directions to reinstate Williams' claim and return this case to the ALJ for further proceedings consistent with this opinion.

Justice COATS dissents and Justice EID joins in the dissent.

Justice COATS, dissenting.

Once more, as this court has proven itself wont to do, the majority finds ambiguity in the workers' compensation statutes and resolves it by applying what it views as an overriding legislative intent to benefit claimants. Because I consider the details of its analysis of less significance, I offer only a brief explanation why I believe the majority's approach leads it to an erroneous conclusion.

The legislative scheme provides for the treatment of an injured worker by an approved physician, but it also permits either party to challenge that physician's determination that the worker's condition has improved as much as it will, and his assessment of the seriousness of the worker's remaining disability. *See* § 8–42–107(8), C.R.S. (2006). The majority finds ambiguity in a phrase of a related statute, providing for the case to be closed by the employer's admission of liability unless the claimant contests that admission. If the claimant wishes to contest the employer's admission, and "if an independent medical examination has not already been conducted," the statute requires the claimant to select an independent medical examiner. § 8–43–203(2)(b)(II), C.R.S. (2006). Construing this phrase to limit the applicability of the statutory procedure for challenging an employer's admission of liability to those admissions made immediately after an initial determination by the treating physician, the majority feels free to invent, according to its own sensibilities, a procedure for challenging an assessment of the worker's disability following a successful challenge and further treatment.

Even if one accepts the majority's position that this phrase was not intended simply to relieve the claimant of a duty to submit to another independent medical exam when he has already undergone one out of dissatisfaction with the treating physician's finding at issue, and that the phrase is therefore truly ambiguous, it seems difficult to seriously suggest that the ambiguity should be resolved in favor of an unstated legislative intention to provide no process whatsoever for follow-up exams, and instead to leave it to the courts to create one out of whole cloth. I find it quite unconvincing to suggest, as the majority does, that the legislature intended to permit a complete reversal of the allocation of burdens and costs it prescribed for an initial challenge, instead imposing on employers an obligation to seek and pay for additional IME's, for all subsequent determinations of maximum improvement and disability, even though the employer does not contest the treating physician's findings. In fact, if the challenge procedure set out in the statute is limited to initial findings by treating physi-

cians, as the majority holds today, then the statute fails to authorize any challenge to a subsequent determination of maximum improvement by the treating physician.

Finally, I disagree with the deference shown by the majority to the guidelines of the director. While we would be foolish not to consider the director's attempts to resolve practical difficulties in applying the statutes, her guidelines (as she herself notes) are not the equivalent of rules promulgated by an executive branch agency to which interpretive authority has been delegated by the legislature. Practical (and perhaps even equitable) as the director's guidelines may be, she does not have the authority to promulgate law or to construe statutes for this court.

Because I consider the court's holding today yet another demonstration of its proclivity to disregard the legislature's own statutes in order to implement, in the way the court thinks best, what it takes to be a greater legislative policy goal, I respectfully dissent.

I am authorized to state that JUSTICE EID joins in this dissent.

### APPENDIX

Interpretive Bulletin 11A
Division of Worker's Compensation
Released March 6, 2006

**Interpretive Bulletins**
**Director's Interpretations of Issues Impacting the Colorado Workers' Compensation System**

In an effort to provide guidance on the practical applications of the Colorado Workers' Compensation Act, we are publishing Director's interpretations of statutes and other factors affecting the system, in the form of *Interpretive Bulletins.* The purpose is to provide greater levels of consistency and predictability as to how the Colorado system is intended to operate. While the opinions do not have the force and effect of rule, they are offered as navigational tools to clarify and simplify processes, create efficiencies, and to reduce litigation.

If you have questions regarding this information or issues you would like to see addressed in future bulletins, please direct your inquiries to MaryAnn Whiteside, Director of the Division of Workers' Compensation, at 633 17th St., 4th Floor, Denver, CO 80202, FAX 303–318–8049 or email at maryann. whiteside@state.co.us.

### FOLLOW UP DIVISION INDEPENDENT MEDICAL EXAMINATIONS
**Release Date:** 3/6/06

**Revision Date:**

As a result of the Colorado Court of Appeals reaching differing conclusions in two opinions, *Stefanski* and *Williams,* the Division has received inquiries and requests for guidance on the issue of follow-up Division Independent Medical Exams (DIMES). Pending final judicial resolution of this issue, the Division provides the following guidance.

This discussion involves a fact pattern where the doctor performing a DIME concludes that the claimant is not at maximum medical improvement (MMI), and the procedure that should be followed thereafter. It may be helpful to examine the history of this issue. In the past the Division's view had been that, unless the DIME doctor's opinion was overcome at hearing, the resolution of MMI remained with the DIME doctor. In other words, the claimant should receive the necessary additional care or treatment recommended by the DIME, but then would return to the DIME doctor for a follow-up examination and determination of MMI. It follows that an opinion in the interim by an authorized treating doctor that the claimant reached MMI might substantiate the need for the follow-up DIME, but would not have binding effect nor provide the basis for the filing of a Final Admission.

As a practical matter, this interpretation would typically result in the insurer being the requesting party for the follow-up DIME. This view appears consistent with a limitation of having only one DIME in an open claim. See § 8–43–203(2)(b)(II), "... if an independent medical examination has not already been conducted."

The Industrial Claim Appeals Office (ICAO) reached a different conclusion in *Pe-*

rales v. *Napier Enterprises, Inc.* In that case the ICAO concluded that when the DIME doctor finds that the claimant is not at MMI and the claimant's care is returned to an authorized treating doctor, the parties are essentially returned to the same legal position they were in prior to the DIME. That is, when an authorized treating doctor subsequently determines MMI the insurer may either request a DIME or file a Final Admission. If a Final Admission is filed the claimant must either accept the Final Admission or request a DIME. In response to the ICAO decision, and to provide consistent guidance in the system, the Director adopted the ICAO's position in *Perales* and on February 24, 2005 issued Interpretive Bulletin No. 11. This Interpretive Bulletin attempted to clarify that if the insurer or claimant requested a DIME after the second determination of MMI by an authorized treating doctor, that exam constituted a follow-up DIME.

Subsequently the Court of Appeals issued a decision in *Stefanski v. ICAO,* 128 P.3d 282, (Colo.App.2005); cert. granted February 13, 2006, 2006 WL 391932. The Court concluded that when a DIME doctor determines the claimant is not at MMI, and an authorized treating doctor places claimant at MMI for the second time, the insurer is obligated to return the claimant to the DIME doctor for a follow-up examination. The Court held that the insurer could not file a Final Admission in an attempt to close the claim and shift the burden to claimant to initiate and bear the cost of another DIME. The Director then rescinded Interpretive Bulletin No. 11 on September 15, 2005 in view of the Court's decision in *Stefanski.*

Next, on January 12, 2006, a separate Division of the Court of Appeals issued an opinion in *Williams v. ICAO,* 128 P.3d 335 (Colo. App.). The Court held that the 30–day time limit in § 8–42–107.2(2)(b) applies to both an initial request for a DIME and a request for a follow-up DIME. The Court determined that an insurer could file a Final Admission after an authorized treating doctor finds MMI for a second time, and the claimant must then timely request a DIME to contest the Final Admission. The Court recognized that its decision conflicted with the *Stefanski* opinion.

There does not appear to be any way to reconcile or harmonize *Stefanski* and *Williams.* Nor is it clear which interpretation will ultimately prevail. As a result it is precarious to provide guidance in an area that is so uncertain. On the other hand, cases continue to go through the system and this issue continues to arise. Some type of guidance is needed to fulfill the statutory mandate of providing quick and efficient delivery of benefits at a reasonable cost to employers, without the necessity of litigation.

Accordingly, the Division believes that when this factual scenario arises the parties should attempt to reach agreement on how to proceed. This way the parties go forward with a mutual understanding of the procedures and timelines that will be followed. If agreement cannot be reached there is the possibility that whatever actions are taken will be found to be incorrect and final resolution of the claim becomes uncertain.

If the parties are unable to reach agreement, the Division believes that the better course of action is to return the claimant to the DIME doctor for a follow-up examination and not file a Final Admission based on an authorized treating doctor's second determination of MMI. This belief is grounded in both legal and practical considerations. One consideration is that if a Final Admission is filed and the decision in *Stefanski* is upheld, it could be determined that the Final Admission is not valid and did not close the claim.

Additionally, in both *Stefanski* and *Williams* the Court discussed the application of the language in § 8–42–107.2(6): " . . . for which a division IME has not been requested, pursuant to section 8–42–107". As noted earlier, the Division has interpreted language in § 8–43–203(2)(b)(II) as holding that only one DIME may be conducted in an open claim. The Division's interpretation has been that when a DIME doctor finds that the claimant is not at MMI the DIME remains open, and is not concluded until the DIME doctor makes a determination of MMI after a follow-up visit. Under this interpretation the DIME is not used to dispute the second finding of MMI by an authorized treating

doctor because that finding does not justify the filing of a Final Admission. The claimant previously requested the DIME and in a sense prevailed, and unless a different result obtains as a result of a hearing, must be returned for a follow-up exam to conclude the DIME process. Efficient resolution of claims, of course, requires there be no undue delay in concluding the DIME.

Application of an alternative interpretation raises the possibility of a claimant being "whipsawed" back and forth between the DIME and authorized treating doctor. It can also result in the claimant having to pay for the DIME each time he/she goes back. As noted by the Court in *Williams*, this could result in undue financial burden on the claimant's due process right to be heard. At a minimum, if the claimant is required to request and pay for one or more follow-up DIMEs, the procedures for requesting and determining indigent status must be available each time.