Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 18, 2020

**2020 CO 41**

**No. 19SC298, *Destination Maternity v. Burren*—Workers' Compensation—
Maximum Medical Improvement.**

In this workers' compensation case, the supreme court considers whether
an Administrative Law Judge may place a claimant at maximum medical
improvement ("MMI") after concluding that an employer or an employer's insurer
has overcome the finding of a Division Independent Medical Examination doctor
that a claimant hasn't reached MMI.

The supreme court holds that once an Administrative Law Judge concludes
that an employer or an employer's insurer has overcome a Division Independent
Medical Examination doctor's MMI opinion, the Administrative Law Judge may
determine the claimant's MMI status and permanent impairment rating as
questions of fact.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 41

### Supreme Court Case No. 19SC298
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA565

### Petitioners:

Destination Maternity and Liberty Mutual Insurance Company,

v.

### Respondent:

Susan Burren.

### Judgment Reversed
*en banc*
May 18, 2020

**Attorneys for Petitioners:**
Ruegsegger Simons & Stern, LLC
Michele Stark Carey
    *Denver, Colorado*

**Attorneys for Respondent:**
Irwin Fraley, PLLC
Roger Fraley, Jr.
    *Centennial, Colorado*

**Attorneys for Amicus Curiae Colorado Self Insurers Association:**
Hall & Evans, L.L.C.
Douglas J. Kotarek
Matthew J. Hegarty
*Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** dissents.

¶1 "Maximum medical improvement" ("MMI") is often a pivotal point in a workers' compensation case. It marks when an injured employee stops receiving certain temporary statutory benefits and potentially starts receiving permanent disability benefits, the costs of which are borne by employers and their insurers. Because of the economic implications for all concerned, MMI can become a legal battleground. This case has been fought on that battleground for years now.

¶2 Susan Burren was injured at work, and she received temporary workers' compensation benefits after her employer admitted liability. Many months passed, with many efforts to treat her injuries, but none of her authorized treating physicians ("ATPs") placed her at MMI. Her employer and her employer's insurer sought a second opinion regarding Burren's MMI status, and Burren subsequently underwent a Division Independent Medical Examination ("DIME"). The DIME doctor who examined Burren also declined to place her at MMI. The employer and insurer then challenged the DIME doctor's opinion under section 8-42-107(8)(b)(III), C.R.S. (2019), of the Workers' Compensation Act ("Act"). For the reasons discussed below, an administrative law judge ("ALJ") concluded that the employer and insurer had overcome the DIME doctor's finding. The ALJ then placed Burren at MMI with a finding of no permanent impairment, making Burren ineligible to receive permanent disability benefits. An administrative panel agreed with the ALJ. Burren appealed.

¶3     A division of the court of appeals concluded that the ALJ had no authority to place Burren at MMI.  Instead, Burren should have been allowed to resume treatment with her ATPs until either an ATP or a DIME doctor placed her at MMI. The employer and its insurer asked for our review.

¶4     We reverse.  We hold that once an ALJ concludes that an employer or an employer's insurer has overcome a DIME doctor's MMI opinion under section 8-42-107(8)(b)(III), the ALJ may determine the claimant's MMI status and permanent impairment rating as questions of fact.

## I.  Facts and Procedural History

## A.  MMI, Permanent Impairment, and the DIME Process

¶5     The Act provides both medical treatment and disability compensation for employees injured in the workplace.  *Harman-Bergstedt, Inc. v. Loofbourrow*, 2014 CO 5, ¶ 10, 320 P.3d 327, 329.  In the parlance of workers' compensation law, these employees are generally referred to as claimants.  If an employer or the employer's insurer (for ease of reference, we'll just refer to them collectively as "employer") admits liability, it typically offers a claimant a list of ATPs, who are available to provide medical care to the claimant.  *Williams v. Kunau*, 147 P.3d 33, 36 (Colo. 2006).  A claimant might also receive temporary lost-wage benefits. *Harman-Bergstedt*, ¶ 13, 320 P.3d at 330.

¶6     A claimant receives such care and benefits until she reaches MMI, § 8-42-105(3)(a), C.R.S. (2019), the "point in time when any medically determinable physical or mental impairment as a result of [workplace] injury has become stable and when no further treatment is reasonably expected to improve the condition," § 8-40-201(11.5), C.R.S. (2019).  After reaching MMI, a claimant stops receiving temporary disability benefits, and if the injury resulted in permanent medical impairment, the claimant begins receiving permanent disability benefits. *Harman-Bergstedt*, ¶ 13, 320 P.3d at 330.

¶7     Generally, an ATP determines whether a claimant has reached MMI. § 8-42-107(8)(b)(I) ("An authorized treating physician shall make a determination as to when the injured employee reaches maximum medical improvement.").  If an ATP places the claimant at MMI and "permanent medical impairment has resulted from the injury, the [ATP] shall determine a medical impairment rating as a percentage of the whole person." *Id.* at -107(8)(c).  A claimant's medical impairment rating dictates how much the claimant will receive in permanent disability benefits. *Id.* at -107(8)(d).

¶8     But the Act also allows an employer to dispute the ATP's conclusion.  The employer may do so by requesting that the claimant undergo a DIME, but only when:

- at least twenty-four months have passed since the date of injury;

5

- a party has requested in writing that an ATP determine whether the claimant has reached MMI;

- the ATP has not determined that the claimant has reached MMI; and

- a physician other than the ATP has determined that the claimant has reached MMI.

*Id.* at -107(8)(b)(II)(A)–(D).  If the DIME doctor determines that a claimant has reached MMI, the doctor "shall also determine the injured worker's permanent medical impairment rating."  *Id.* at -107(8)(b)(III).

¶9     Because an employer cannot request such an exam until twenty-four months after the injury, that exam is known as a "twenty-four-month DIME."  *See Burren v. Indus. Claim Appeals Office*, 2019 COA 37, ¶ 5, __ P.3d __.  As the party requesting the twenty-four-month DIME, the employer must pay the full cost of the exam.  § 8-42-107.2(5)(a), C.R.S. (2019).

¶10    A twenty-four-month DIME doctor's MMI determination typically controls. *See City of Manassa v. Ruff*, 235 P.3d 1051, 1059 (Colo. 2010) (Martinez, J., dissenting) ("The findings of a[] [D]IME physician are all but dispositive."); *Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office*, 5 P.3d 385, 387 (Colo. App. 2000) (noting that a DIME doctor's opinion "has presumptive effect").  However, section 8-42-107(8)(b)(III) allows a party to overcome the DIME doctor's "finding regarding [MMI] . . . by clear and convincing evidence."  Clear and convincing evidence is "stronger than a mere 'preponderance'; it is evidence that is highly

6

probable and free from serious or substantial doubt." *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 414 (Colo. App. 1995). Thus, to carry that burden, an employer must produce evidence showing that it's "highly probable" the DIME doctor's MMI determination was incorrect. *Id.*

¶11 ALJs "have original jurisdiction to hear and decide all matters arising under [the Act]." § 8-43-201(1), C.R.S. (2019). Thus, an ALJ is the arbiter of disputes under section 8-42-107(8)(b)(III) and determines whether the appealing party has overcome the twenty-four-month DIME doctor's MMI determination by clear and convincing evidence. *Magnetic Eng'g*, 5 P.3d at 387.

## B. Burren's Claim

¶12 Burren suffered work-related injuries in September 2014 at her job as the manager of a retail clothing store owned by Destination Maternity, her employer. Burren testified that she injured herself after installing a steel and Plexiglas shelf above her head and moving a fourteen-foot ladder across an uneven floor. She first reported pain in her right arm and shoulder but later complained of additional pain in her neck. She received treatment for those injuries from multiple ATPs; however, none of her ATPs placed her at MMI.

¶13 In June 2015, Destination Maternity and its insurer, Liberty Mutual Insurance Company (collectively, "Destination Maternity"), hired a third-party physician, Dr. Allison Fall, to examine Burren. Dr. Fall concluded that Burren had

7

not suffered any work-related neck injury and predicted that she would reach MMI for her right arm and shoulder injuries "in three to six months." Dr. Fall also noted that Burren's subjective pain complaints did not "match the injury and the objective findings," and she recommended that Burren "pursu[e] a psychological evaluation."

¶14 After that appointment, Burren continued to receive medical treatment from her ATPs. One of those physicians, Dr. Michael Horner, placed Burren at MMI for her neck injury on June 28, 2016. Dr. Fall re-examined Burren about one month later, at which point she placed Burren at MMI for her right arm and shoulder injuries as of August 9, 2016, with no permanent impairment. Destination Maternity then properly petitioned for a twenty-four-month DIME under section 8-42-107(8)(b)(II).

¶15 The DIME doctor, Dr. Clarence Henke, examined Burren on December 27, 2016, and he concluded that: (1) Burren suffered work-related injuries to her right arm, right shoulder, and neck; and (2) none of those injuries had reached MMI. Destination Maternity challenged Dr. Henke's conclusions under section 8-42-107(8)(b)(III).

¶16 After a hearing at which both Burren and Dr. Fall testified, the ALJ concluded that Destination Maternity produced enough evidence contradicting

the DIME to prove that it's "highly probable" that Dr. Henke was incorrect. Further, the ALJ noted that:

- Dr. Henke's examination and report were incomplete, as he proceeded "without having numerous relevant and necessary medical records, including Dr. Fall's [second] report";

- Dr. Henke "failed to provide any details or analysis as to why [Burren] [wa]s not at MMI, or what needs to be done for [her] to reach MMI";

- although Dr. Henke recommended that Burren follow-up with one of her ATPs for further medical care, he "failed to state what body part [she] should follow up with," and what type of future care she needed "despite nearly three years of treatment without any perceived benefit"; and

- Dr. Henke failed to provide an impairment rating, "a required step in the DIME process."

The ALJ also found that Burren's testimony that no medical treatment provided her relief, her "ambivalence" about continued treatment, her "exaggerated" reports of pain and symptoms, and her refusal to undergo a psychological exam, "undermine[d] [Burren's] credibility concerning the presence of an actual injury." The ALJ concluded that Destination Maternity had overcome the DIME doctor's conclusions by clear and convincing evidence, and the ALJ placed Burren at MMI for her workplace injuries as of June 28, 2016, with no permanent impairment.[1]

---

[1] It's somewhat unclear whether the ALJ placed Burren at MMI as of June 28, 2016, for all of her workplace-related injuries or only her cervical spine injury. In her initial order, the ALJ placed Burren at MMI but required Burren to attend a

9

¶17 Burren appealed the ALJ's decision to the Industrial Claim Appeals Office ("ICAO"). She argued that because none of her ATPs, nor the DIME doctor, placed her at MMI for all of her workplace injuries, the ALJ lacked authority to do so.[2] Burren further asserted that because neither the ATPs nor the DIME doctor placed her at MMI, those physicians couldn't calculate her permanent impairment rating; therefore, the ALJ erred by interpreting that lack of rating as an indication that Burren suffered no permanent impairment from her injuries.

---

psychological exam to "evaluate whether any further treatment is related to or reasonably necessary to cure and relieve [Burren] from the effects of her right upper extremity injuries." Burren challenged that portion of the order as contradicting the ALJ's finding that Burren reached MMI. The ALJ thereafter issued a supplemental order removing that requirement for further treatment and concluding that "[Burren] reached MMI as of June 28, 2016, and without permanent impairment," but noting that "[a]s a result, [Burren] does not require any further treatment *with regard to her cervical spine*." (Emphasis added.) The ALJ also retained language in the supplemental order that Dr. Fall credibly testified that Burren reached MMI without impairment for her right arm and shoulder injuries and that Burren's cervical spine injury wasn't workplace related. Thus, the scope of the ALJ's MMI determination remains slightly ambiguous.

[2] Although Dr. Horner placed Burren at MMI for her neck injury on June 28, 2016, Burren contends that a claimant's MMI date isn't divisible—different injuries arising from the same workplace incident cannot be assigned different MMI dates. Burren points to *Paint Connection Plus v. Indus. Claim Appeals Office*, 240 P.3d 429, 433 (Colo. App. 2010), which says as much. But this issue is not within the scope of the question on which we granted certiorari review; therefore, we do not address it.

¶18    The ICAO panel concluded that, even if a claimant's ATPs and a twenty-four-month DIME doctor agree the claimant isn't at MMI, once an ALJ determines that an employer has overcome the DIME doctor's opinion, the ALJ must determine the claimant's MMI status and permanent impairment rating as a question of fact. *Burren v. Destination Maternity*, W.C. No. 4-962-740-06, 2018 WL 1403659, at *5 (Colo. I.C.A.O. Mar. 15, 2018). The panel noted that an appellate court will uphold an ALJ's factual findings that are supported by substantial evidence in the record. *Id.* at *3. And the panel concluded that substantial evidence ("namely the opinions of Dr. Fall and Dr. Horner") supported the ALJ's finding that Burren reached MMI on June 28, 2016, with no permanent impairment.[3] *Id.* at *4.

¶19    A division of the court of appeals reversed the ICAO's decision. *Burren*, ¶ 1. The division concluded that an ALJ may only determine MMI as a question of fact when the ATP and the DIME doctor disagree regarding a claimant's MMI status. *Id.* In the absence of such disagreement, "treatment should continue until

---

[3] The ICAO interpreted the ALJ's supplemental order as placing Burren at MMI for all her workplace-related injuries on June 28, 2016. Burren didn't challenge whether the record supports that finding by the ICAO. Nor did she ask this court to determine whether substantial evidence supports the ALJ's finding that she reached MMI on June 28, 2016. Thus, neither of these issues is before the court today, and we decline to review whether the record supports a June 28, 2016, MMI date.

either the DIME or the ATP places the claimant at MMI." *Id.* at ¶ 19. The division thus concluded that once the DIME physician found Burren was not at MMI, she "should have been returned to the ATP for continued treatment." *Id.* at ¶ 18.

¶20 We granted Destination Maternity's petition for certiorari review.[4]

## II. Analysis

¶21 We begin with the standard of review, then examine (1) the authority of an ALJ under the plain language of the Act generally and under the plain language of section 8-42-107(8)(b)(III) specifically, (2) the ICAO's interpretation of section 8-42-107(8)(b)(III), and (3) the General Assembly's evident intent in adding the twenty-four-month DIME provision. In doing so, we conclude that once an ALJ decides an employer has overcome a DIME doctor's opinion, the ALJ may determine the claimant's MMI status and permanent impairment rating as questions of fact.

---

[4] We granted certiorari to review the following issue:

> Whether the court of appeals erred in holding that an administrative law judge cannot determine when an injured worker has reached maximum medical improvement when neither an authorized treating physician nor a division independent medical examiner has placed an injured worker at maximum medical improvement, despite the plain language of section 8-42-107(8)(b)(III), C.R.S. (2019), which permits the finding(s) of a division independent medical examiner to be overcome by clear and convincing evidence.

## A. Standard of Review

¶22 "We review the proper construction of statutes de novo." *Williams*, 147 P.3d at 36. When interpreting a statute, the reviewing court "must determine and put into effect the intent of the legislature." *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004). We "'give considerable weight to an agency's interpretation of its own enabling statute'; however, we set aside actions or interpretations that are clearly erroneous, arbitrary, or otherwise not in accordance with the law." *Id.* (quoting *Colo. Dep't of Labor & Emp't v. Esser*, 30 P.3d 189, 193 (Colo. 2001)).

## B. Whether an ALJ Can Determine MMI Status

¶23 Burren contends that in this context only ATPs and DIME doctors are statutorily authorized to place a claimant at MMI. Under Burren's interpretation, even if an employer overcomes a DIME doctor's opinion that a claimant isn't at MMI, the ATP's existing finding that a claimant hasn't reached MMI remains fully intact. And ALJs are powerless to overrule an ATP and conclude otherwise.

¶24 Destination Maternity asserts that once an ALJ concludes that an employer has overcome the DIME doctor's finding that a claimant isn't at MMI, the ALJ can determine the claimant's MMI status as a question of fact.

¶25 As always, in resolving such a dispute, we start with the language and structure of the statutory scheme in question. We begin by widening our lens and

looking at the authority of ALJs under the Act generally before narrowing our focus to the language of section 8-42-107(8)(b)(III) specifically.

## 1. ALJs' Authority Under the Act

¶26 The Act empowers ALJs to "decide *all matters* arising under [the Act]." § 8-43-201(1) (emphasis added). It also authorizes ALJs to make "evidentiary rulings" and issue "orders" as required "[i]n connection with hearings." § 8-43-207(1)(c), (k), C.R.S. (2019); *see* § 8-40-201(15) (defining "order" to include "any decision . . . or other determination arrived at by [an ALJ]"). Whether a party has overcome a twenty-four-month DIME doctor's opinion regarding a claimant's MMI status is therefore a question of fact for the ALJ as the "sole arbiter of conflicting medical evidence." *Davison*, 84 P.3d at 1031; *Magnetic Eng'g*, 5 P.3d at 387.

¶27 Before an ALJ concludes that an employer has overcome the DIME doctor's opinion, conflicting evidence regarding whether a claimant has reached MMI must exist. After all, the clear-and-convincing-evidence standard requires an employer to prove that it's highly probable the DIME doctor's MMI opinion is incorrect. *Metro Moving*, 914 P.2d at 414. "[I]f a factual issue arises as to the attainment of MMI, then the ALJ must resolve that issue." *Monfort Transp. v. Indus. Claim Appeals Office*, 942 P.2d 1358, 1360 (Colo. App. 1997). And a resolution of those conflicting opinions requires the ALJ to determine which physician is correct: the DIME

14

doctor who didn't place the claimant at MMI or the third-party physician who did. *See Postlewait v. Midwest Barricade*, 905 P.2d 21, 24 (Colo. App. 1995) (noting that an ALJ is not bound to credit any one physician's opinion regarding MMI when weighing the sufficiency of medical evidence under section 8-42-107(8)(b)(III)). Therefore, it's within the ALJ's power as the arbiter of evidentiary disputes in DIME dispute hearings to determine whether an injured employee has reached MMI.[5]

¶28 Contrary to the division's opinion below, an ALJ's statutory power to render evidentiary decisions does not disappear merely because the ATP and the DIME doctor agree that a claimant hasn't reached MMI. The court of appeals concluded that when "there is no conflict between the ATP's and DIME physician's opinions . . . there [i]s no conflict [in medical opinions] for the ALJ to resolve." *Burren*, ¶ 15. But the statute expressly injects the opinions of third-party physicians into the twenty-four-month DIME process: Before an employer may request a twenty-four-

---

[5] We note that subsection (8)(b)(III) doesn't only address situations where a DIME doctor has placed an employee at MMI. The statute provides parties an opportunity to challenge a DIME doctor's "finding *regarding* [MMI]." § 8-42-107(8)(b)(III) (emphasis added). "Regarding" simply means "with respect to : concerning." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*regarding*; [https://perma.cc/2UJ9-EDNZ]. Thus, subsection (8)(b)(III) applies whether the DIME doctor found the employee at MMI or not at MMI.

month DIME, a third-party physician must have placed the claimant at MMI. § 8-42-107(8)(b)(II)(D). And if the employer presents the opinion of a third-party physician when it invokes the twenty-four-month DIME process, nothing in the statute prevents the ALJ from considering that opinion. *Mosley v. Indus. Claim Appeals Office*, 78 P.3d 1150, 1153 (Colo. App. 2003) (noting that an ALJ is "free to consider the other medical evidence" concerning a claimant's MMI status).

¶29 Accordingly, if an employer overcomes a twenty-four-month DIME doctor's MMI opinion, an ALJ may determine an employee's MMI status as a question of fact.

## 2. The ICAO's Interpretation of Section 8-42-107(8)(b)(III)

¶30 The ICAO has interpreted section 8-42-107(8)(b)(III) to allow ALJs to determine an employee's MMI status as a question of fact after an employer overcomes the twenty-four-month DIME doctor's MMI determination, *even if* both the DIME doctor and the employee's ATPs agree that the employee hasn't reached MMI. *McFadden v. Sun Health Care*, W.C. No. 4-710-119, 2011 WL 737114 (Colo. I.C.A.O. Feb. 25, 2011).

¶31 In *McFadden*, the employer and the insurer requested a DIME after none of the ATPs placed the employee at MMI. *Id.* at *1. The DIME doctor agreed with the ATPs and found that the employee wasn't at MMI; however, the employer and insurer challenged the DIME doctor's opinion under subsection (8)(b)(III),

16

presenting evidence by a third-party physician that the claimant had reached MMI. *Id.* at *1–2. The ALJ concluded that the employer and insurer had overcome the DIME doctor's findings by clear and convincing evidence and placed the claimant at MMI, crediting the employer's third-party physician's testimony. *Id.*

¶32 The ICAO upheld the ALJ's decision. *Id.* at *3. Like the panel that reviewed Burren's claim, the *McFadden* panel approved: (1) the ALJ's reliance on a third-party physician's testimony regarding the employee's MMI status, *id.* at *2; and (2) the ALJ's decision to place the claimant at MMI even though neither the DIME doctor nor the ATP had placed the employee at MMI, *id.* at *2–3. Thus, *McFadden* supports allowing an ALJ to place a claimant at MMI as part of the DIME dispute process, even if a third-party physician is the only doctor who found the employee at MMI.

¶33 Because the ICAO administers the Act, this court defers to its reasonable statutory interpretations. *Pinnacol Assurance v. Hoff*, 2016 CO 53, ¶ 26, 375 P.3d 1214, 1220. And since the *McFadden* panel's interpretation of section 8-42-107(8)(b) reasonably aligns with the plain language and structure of the Act, we defer to it today.[6]

---

[6] Burren asserts that *McFadden* doesn't represent the ICAO's interpretation of section 8-42-107(8)(b), because the employee only challenged whether the ALJ's decision was supported by substantial evidence, not the ALJ's interpretation of

17

### 3. The Legislature's Intent in Adding the Twenty-Four-Month DIME Provisions

¶34 Finally, by adding the twenty-four-month DIME provisions in section 8-42-107(8)(b)(II) and (III), the legislature contemplated the need for ALJs to resolve an employee's MMI status at a "hearing" in cases such as Burren's. The division's holding would impede that legislative goal.

¶35 Originally, the Act allowed only ATPs to place an employee at MMI. *See* Ch. 112, sec. 1, § 8-42-107(8)(b), 1996 Colo. Sess. Laws 456, 456–57. If an ATP refused to do so, the Act did not provide employers the opportunity to obtain a second opinion from a neutral, division-sponsored physician. But in 1996 the General Assembly added the twenty-four-month DIME provisions in section 8-42-107(8)(b). *See* 1996 Colo. Sess. Laws at 457. The legislature also amended section 8-42-107(8)(b)(III) to allow employers to overcome a DIME doctor's opinion by clear and convincing evidence, thus indicating that section 8-42-107(8)(b) should function to ensure that employers and insurers receive an

---

section 8-42-107(8)(b). True, the employee in *McFadden* simply argued that the ALJ erred in finding that the employer overcame the DIME doctor's opinion by clear and convincing evidence. 2011 WL 737114, at *2. But if the *McFadden* panel hadn't construed section 8-42-107(8)(b) to permit an ALJ to credit, over the contrary opinions of an ATP and a DIME doctor, a third-party physician's testimony that an employee has reached MMI, it wouldn't have upheld the ALJ's order.

18

*accurate* second opinion. *See* 1996 Colo. Sess. Laws at 457. The division's holding severely limits the remedial power of these provisions.

¶36 The division relied on this court's decision in *Williams* to hold that a claimant must return to the ATP for continued treatment if the ATP and DIME doctor agree that the claimant isn't at MMI. *Burren*, ¶¶ 17–18. But in *Williams*, the employer did not challenge the DIME doctor's MMI opinion. 147 P.3d at 34–35. Thus, the DIME doctor's determination that the claimant hadn't reached MMI retained its presumptive effect. *Magnetic Eng'g*, 5 P.3d at 387. Here, Destination Maternity not only challenged but *overcame* the DIME doctor's opinion by clear and convincing evidence. Therefore, *Williams* is inapposite.

¶37 The division recognized that its "interpretation of the statute effectively precludes an employer's ability to challenge a twenty-four-month DIME when the DIME agrees with the ATP that a claimant is not at MMI." *Burren*, ¶ 19. The division justified its holding by noting that "prior to the addition of section 8-42-107(8)(b)(II) in 1996, employers were at the mercy of ATPs and had no recourse to challenge perpetual care; treatment simply continued until an ATP placed the claimant at MMI." *Id.*

¶38 While the division's observation is correct, its holding fails to give full effect to the statutory amendments. First, the division's approach returns the claimant to the ATP for continued treatment, even though the legislature added the twenty-

19

four-month DIME provision to prevent unending care by an ATP when conflicting medical evidence indicates the claimant has reached MMI and two years have passed since the date of injury. *See* 1996 Colo. Sess. Laws at 457. And, just as the division noted, it would essentially prevent employers from challenging a DIME doctor's determination that a claimant isn't at MMI if the ATP also found the claimant isn't at MMI. Yet courts should avoid statutory constructions that would render certain provisions "without practical effect." *Howard v. People*, 2020 CO 15, ¶ 13, 458 P.3d 893, 897 (quoting *Roberts v. Bruce*, 2018 CO 58, ¶ 9, 420 P.3d 284, 286). Therefore, we avoid such a construction here.

¶39 The division also proposed an alternate solution for employers in this situation—"reinvok[e] the twenty-four-month DIME process at an appropriate time in the future." *Burren*, ¶ 19. This suggestion might allow employers to obtain a more accurate second opinion regarding an injured employee's MMI status, as it would permit the appointment of a new DIME doctor. But nothing in subsection (8)(b)(III) indicates that an employer should be forced to reinvoke the twenty-four-month DIME process if it has already overcome the original DIME doctor's MMI determination. Had the legislature intended the twenty-four-month DIME process to function in that manner, it could've said so. It did not, and "[w]e do not add words to the statute." *People v. Diaz*, 2015 CO 28, ¶ 12, 347 P.3d 621, 624 (quoting *Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007)). Moreover, the division's

20

suggestion could have the effect of placing employers on a kind of MMI hamster wheel, where they might repeatedly reinvoke the twenty-four-month DIME process without resolution. The language and structure of the statute don't support a construction that yields that potential outcome.

### C. Whether an ALJ Can Determine Permanent Impairment

¶40 Burren also argues that we shouldn't allow an ALJ to place an employee at MMI on these facts because of the effect on a claimant's permanent impairment rating. More pointedly, Burren contends that only an ATP or a DIME doctor can determine a claimant's permanent impairment rating, and those physicians cannot provide that rating until placing the claimant at MMI. Thus, allowing an ALJ to place a claimant at MMI in such cases and then determine a claimant's permanent impairment would deprive claimants of their statutory right to an ATP- or DIME doctor-approved rating and force injured employees to undertake the financially burdensome task of presenting their own evidence regarding permanent impairment.

¶41 We disagree. First, the Act doesn't specify that only ATPs and twenty-four-month DIME doctors may determine a claimant's permanent impairment rating. ATPs and DIME doctors *may* calculate a claimant's impairment rating. *See* § 8-42-107(8)(b)(III), (c). But so too may any other level-II-accredited physician.

§ 8-42-101(3.6)(b), C.R.S. (2019); § 8-42-107(8)(c).[7]   And a level-II-accredited physician may participate in a workers' compensation case without serving as one of the employee's ATPs or as a DIME doctor.  For example, Dr. Fall (the third-party physician hired by Destination Maternity to examine Burren) is a level-II-accredited physician and thus qualified to determine Burren's impairment rating.  Yet Dr. Fall served as neither an ATP nor a twenty-four-month DIME doctor in this case.  So, we reject Burren's contention that we should not allow an ALJ to place a claimant at MMI and then address the employee's impairment rating in cases like this one.

¶42     We also reject Burren's assertion that allowing an ALJ to determine a claimant's impairment rating under these circumstances forces an injured employee to undertake the financially burdensome task of producing evidence of impairment from a third-party physician.  Both the Act and the procedures of the Division of Workers' Compensation (the "DWC") include safeguards that prevent such an outcome.  Notably, the statute doesn't require that an ATP or a twenty-four-month DIME doctor first place an employee at MMI before calculating the

---

[7] The accreditation system functions to "provide physicians with an understanding of the administrative, legal, and medical roles and . . . is accessible to every licensed physician, with consideration of specialty and geographic diversity."  § 8-42-101(3.6)(e).

22

employee's permanent impairment rating. True, if an ATP or DIME doctor determines that a claimant *has* reached MMI, then that physician *must* determine the claimant's impairment rating. § 8-42-107(8)(b)(III), (c). But nothing in the statute prevents an ATP or DIME doctor from providing a provisional rating for the ALJ to consider at a DIME dispute hearing.[8]

¶43  In fact, the DWC specifically directs twenty-four-month DIME doctors to address impairment if requested by the parties, *even if* the DIME doctor determines the claimant hasn't reached MMI. Colo. Dep't of Labor & Emp't, Div. of Workers' Compensation Desk Aid #11—Impairment Rating Tips: DIME Panel Physician Notes, 14 ("Remember that a DIME is a legal/medical proceeding and you are being asked to provide specific information. *If the party requesting the DIME has*

---

[8] Burren cites court of appeals caselaw that she contends requires an ATP or DIME doctor to first place the employee at MMI before rating the claimant's permanent impairment. *See Dziewior v. Mich. Gen. Corp.*, 672 P.2d 1026, 1030 (Colo. App. 1983) (noting that "permanent disability generally cannot be determined until the authorized physicians treating a claimant for work-related injuries advise that they can do nothing further for the claimant"); *accord MGM Supply Co. v. Indus. Claim Appeals Office*, 62 P.3d 1001, 1005 (Colo. App. 2002). However, the court of appeals decided *Dziewior* before the General Assembly amended section 8-42-107(8)(b) to include the twenty-four-month DIME dispute provisions, and nothing in the Act prevents a DIME doctor from providing a provisional impairment rating. Accordingly, we decline to interpret section 8-42-107(8)(b) to prevent DIME doctors from providing provisional ratings.

23

*asked that impairment be addressed, and if you find the patient **not at MMI** for that work-related injury, you should nevertheless provide a rating for that injury.*").

¶44 Here, the DWC directed Dr. Henke, the twenty-four-month DIME doctor who examined Burren, to address permanent impairment. Thus, Dr. Henke should have provided Burren with a provisional impairment rating that she could have introduced at the DIME dispute hearing. Although Dr. Henke failed to provide the rating as requested by Destination Maternity, the DWC again offered *both parties* the opportunity to solicit a provisional rating from Dr. Henke. In the Division's letter to Burren notifying her that Dr. Henke did not place her at MMI, the Division stated: "If the physician did not provide a rating, and either or both parties desire that a rating (for informational purposes) be provided, please convey your request to the [Independent Medical Examination] Unit and we will forward it to the physician."

¶45 Thus, neither the Act nor the DWC's procedural rules prevented Burren from obtaining a DIME doctor-approved provisional rating, free of charge to her. Burren simply elected not to do so.

¶46 We therefore decline to deprive ALJs of their authority to place an employee at MMI because of the effect on an employee's permanent impairment rating. Once an ALJ determines an employee has reached MMI, the employee's

permanent impairment rating becomes a question of fact that the ALJ can resolve after considering any conflicting medical evidence regarding impairment.[9]

### III. Conclusion

¶47     We reverse the judgment of the court of appeals and remand this case to the court of appeals for further proceedings consistent with this opinion.

**JUSTICE MÁRQUEZ** dissents.

---

[9] Burren also argues that she never received notice that the ALJ would address her permanent impairment rating at the DIME dispute hearing, and this deficiency deprived the ALJ of jurisdiction to address impairment. However, Burren didn't raise this argument in her petition to review the ALJ's order or in her appeal to the ICAO. Accordingly, Burren waived her right to challenge the ALJ's order on this ground. *See Bermel v. BlueRadios, Inc.*, 2019 CO 31, ¶ 18 n.4, 440 P.3d 1150, 1154 n.4 (declining to address an argument because the party "failed to raise this argument before the lower courts," so the "issue [was] not properly presented for our consideration").

JUSTICE MÁRQUEZ, dissenting.

¶48 Where an employer-selected authorized treating physician ("ATP") and a Division Independent Medical Examination ("DIME") physician reach opposite conclusions about whether a claimant has reached maximum medical improvement ("MMI") for a work-related injury, I agree that an administrative law judge ("ALJ") may resolve the conflict as a factual matter by crediting one physician's determination over the other. But where both the ATP and DIME physician conclude that a claimant has *not* reached MMI, I disagree that the Workers' Compensation Act authorizes the ALJ to conclude otherwise based on the opinion of an employer-retained third-party physician.

¶49 In construing the Act to reach a contrary result, the majority upsets the careful balance between employee and employer rights struck by the legislature and effectively gives employers yet a third bite at the apple to establish that a claimant has reached MMI. The majority also gives deference to a nonbinding Industrial Claim Appeals Office ("ICAO") ruling that contains no statutory analysis whatsoever. Even more troubling, the record here simply does not support an MMI date of June 28, 2016, for all of the claimant's workplace injuries. *No doctor*—not even the employer-hired third-party physician—opined that the claimant had reached MMI for her arm and shoulder injuries as of that date.

1

¶50 I would affirm the court of appeals and hold that the Act does not authorize an ALJ to find MMI where neither an ATP nor a DIME physician has placed the claimant at MMI. Like the court of appeals, I conclude that nothing prevents an employer from reinvoking the twenty-four-month DIME process, and thus, employers still have avenues to challenge a claimant's ongoing treatment. But unlike the majority, I would not read into the Act a remedy that the legislature did not provide for the relatively rare situation presented here. Because I disagree with the majority's construction of the Act, and because the record does not support the June 28, 2016 MMI date in any event, I respectfully dissent.

## I. Facts and Procedural History

¶51 Susan Burren sustained work-related injuries to her neck, arm, and shoulder in September 2014. Burren received treatment from several ATPs, none of whom placed her at MMI. Destination Maternity retained a third-party physician, Dr. Allison Fall, to examine Burren. On June 24, 2015, Dr. Fall opined that Burren was not at MMI, but she anticipated that Burren would reach MMI "in three to six months."

¶52 On June 28, 2016, one of Burren's ATPs, Dr. Homer, placed Burren at MMI for her cervical spine injury only, but no ATP placed Burren at MMI for her other injuries; consequently, no ATP assigned her an overall MMI status or a permanent impairment rating.

2

¶53    Dr. Fall examined Burren a second time on August 9, 2016. At that time, Dr. Fall opined that Burren had reached MMI with no permanent impairment.

¶54    Several weeks after receiving Dr. Fall's opinion, Destination Maternity requested a twenty-four-month DIME under section 8-42-107(8)(b)(II), C.R.S. (2019), because no ATP had placed Burren at MMI for all of her injuries for over two years. The DIME physician, Dr. Clarence Henke, agreed with Burren's ATPs that Burren had not reached MMI.

¶55    Unsatisfied, Destination Maternity requested a hearing to overcome the DIME physician's finding. At that hearing, Dr. Fall criticized the DIME report and testified that Burren had not suffered a work-related injury to her cervical spine. Dr. Fall did not modify the findings in her June 2015 or August 2016 reports regarding MMI.

¶56    Following the hearing, the ALJ concluded that Destination Maternity had overcome the DIME's findings by clear and convincing evidence. Notably, in its November 22, 2017 supplemental order, the ALJ incorrectly stated that Dr. Fall opined that Burren was at MMI as of June 24, 2015: "On June 24, 2015, Allison Fall, M.D., performed a second Respondents sponsored [examination]. Dr. Fall reported that [Burren] was at MMI without impairment, and that there was no work-related injury to [Burren]'s cervical spine." In fact, Dr. Fall's reports reflect that she did not conclude that Burren was at MMI until August 9, 2016.

¶57    In the conclusions of law portion of the order, the ALJ noted that "[t]he determination of MMI must be made by an authorized treating physician. § 8-42-107(8)(b)(I)," and concluded "that [the ATP] placed [Burren]'s *cervical spine injury* at MMI on June 28, 2016, with no impairment." (Emphasis added.)

¶58    The ALJ ultimately concluded that Destination Maternity had overcome the DIME report by clear and convincing evidence. Regarding MMI, the ALJ concluded that "[Burren] reached MMI as of June 28, 2016, and without permanent impairment. As a result, [Burren] does not require any further treatment *with regard to her cervical spine*."[1] (Emphasis added.)

¶59    Burren petitioned for ICAO review, contending that the ALJ erred in finding her at MMI and assigning her a permanent impairment rating when no ATP or DIME had found that she had reached MMI or assigned her an overall permanent impairment rating. Burren also argued that the ALJ erred by finding she was at MMI for only one of her three injuries, noting that the court of appeals has long

---

[1] The ALJ's reference to Burren's cervical spine injury was not accidental. In its initial order issued July 27, 2017, the ALJ expressly concluded that further evaluation was necessary "to evaluate whether any further treatment is related to or reasonably necessary to cure and relieve [Burren] from the effects of her right upper extremity injuries." Although this language regarding potential further treatment of Burren's shoulder and arm does not appear in the November 2017 supplemental order, the ALJ's finding of MMI refers only to Burren's cervical spine both in the original order and the supplemental order.

4

held that the Workers' Compensation Act contains no provision for "partial" MMI. *See Paint Connection Plus v. Indus. Claim Appeals Office*, 240 P.3d 429, 433 (Colo. App. 2010).

¶60 The ICAO panel affirmed the ALJ's order. In so doing, it agreed with Burren that "MMI is not divisible and cannot be parceled out among the various components of a multi-faceted industrial injury," but concluded "that is not what the ALJ did here." *Burren v. Destination Maternity*, W.C. No. 4-962-740-06, 2018 WL 1403659, at *4 (Colo. I.C.A.O. Mar. 15, 2018). Instead, the panel reasoned, the ALJ had found Burren was at MMI as of June 28, 2016, for *all* of her work-related injuries based on the opinions of Dr. Fall and the ATP:

> The ALJ essentially adopted the opinions of . . . Dr. Fall and [the ATP], that the claimant reached MMI for all of her industrial injuries as of June 28, 2016 . . . . [S]ince the ALJ's finding regarding the [June 28, 2016] MMI date is supported by substantial evidence, namely the opinions of Dr. Fall and [the ATP], we have no basis to set aside the ALJ's supplemental order on this ground. . . .
>
> Again, relying upon the opinions of Dr. Fall, the ALJ here found that the claimant was at MMI for all her industrial injuries on June 28, 2016, with no impairment.

*Id.* at *4–5.

¶61 The ICAO panel reached this conclusion, even though

- the ATP placed Burren at MMI as of June 28, 2016, for her cervical spine injury only;

- the ALJ's order finds MMI only with respect to Burren's cervical spine injury, not all her injuries;

5

- *no doctor* opined that Burren reached MMI as of June 28, 2016, for her shoulder and arm injuries; and

- Dr. Fall did not place Burren at MMI for her injuries until August 9, 2016.

¶62 Burren appealed, and the court of appeals set aside the panel's order, concluding that section 8-42-107(8)(b)(II) of the Act does not permit an ALJ to determine MMI when neither an ATP nor a DIME physician has placed the injured worker at MMI. *Burren v. Indus. Claim Appeals Office*, 2019 COA 37, ¶¶ 1, 20, __ P.3d __. Having concluded that the panel misinterpreted section 8-42-107(8)(b)(II), the court of appeals did not address whether substantial evidence supported the ALJ's findings of fact. *Id.* at ¶ 20.

## II. Analysis

¶63 Understood in context, section 8-42-107(8)(b)(III) allows a *claimant* to seek to overcome a twenty-four-month DIME doctor's "finding regarding maximum medical improvement and permanent medical impairment" by clear and convincing evidence. As such, the provision provides the injured worker with a response to the employer's second bite at the MMI apple (the twenty-four-month DIME process) when an employer-selected ATP has failed to find that the injured worker has reached MMI but the DIME concludes that she has. But section 8-42-107(8)(b)(III) does not provide employers with yet a third bite at the MMI apple by authorizing the ALJ to make a finding that the claimant has reached MMI

6

based on the opinion of an employer-hired third-party physician where both the ATP and the DIME physician have concluded otherwise.

¶64 Thus, I disagree with the majority's interpretation of the Act. But I also believe the record before us does not support the June 28, 2016 MMI date upheld by the majority in any event.

## A. Section 8-42-107(8) and Determination of MMI

¶65 The declared purpose of the Workers' Compensation Act is to "assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation." § 8-40-102(1), C.R.S. (2019). "The Act is remedial and beneficent in purpose and should be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families." *Williams v. Kunau*, 147 P.3d 33, 38 (Colo. 2006).

¶66 As the majority correctly observes, maj. op. ¶¶ 5–6, a claimant under the Act receives both medical treatment and temporary disability benefits until the worker reaches MMI, § 8-42-105(3)(a), C.R.S. (2019), or the "point in time when any medically determinable physical or mental impairment as a result of injury has become stable and when no further treatment is reasonably expected to improve the condition," § 8-40-201(11.5), C.R.S. (2019). After reaching MMI, the claimant stops receiving temporary disability benefits and can begin receiving permanent

7

disability benefits if the injury resulted in permanent medical impairment. Maj. op. ¶ 6; *Harman-Bergstedt, Inc. v. Loofbourrow*, 2014 CO 5, ¶ 13, 320 P.3d 327, 330.

¶67 Section 8-42-107(8)(b) of the Act establishes the procedure for determining MMI; subsection (8)(b)(I) provides that an "authorized treating physician shall" determine when the injured worker reaches MMI.

¶68 Because the employer or the employer's insurer selects the ATPs who treat an employee's workplace injuries,[2] *see Kunau*, 147 P.3d at 36, ATPs have been viewed as potentially favoring the employer's position. In fact, when the legislature first created the DIME process in 1991, Ch. 219, sec. 15, § 8-42-107(8)(b), 1991 Colo. Sess. Laws 1291, 1309, it was intended to provide *claimants* an independent check on this potential for ATPs to be biased in favor of employers, *see Whiteside v. Smith*, 67 P.3d 1240, 1246 (Colo. 2003) ("[T]he General Assembly created the DIME system within the statutory scheme because of the potential for treating physicians to be biased in favor of the employer and the insurer.").

¶69 For many years, employers had no opportunity to challenge the ATP's finding that a claimant had not reached MMI. *See Aren Design, Inc. v. Becerra*, 897 P.2d 902, 904 (Colo. App. 1995). But in 1996, the legislature amended the Act

---

[2] Employers provide the employee with a list of ATPs from which the employee must choose unless an exception is met. *See generally* § 8-43-404, C.R.S. (2019).

8

to give employers a second bite at the MMI apple by providing an opportunity to request a DIME where an ATP has determined that the claimant has *not* reached MMI. *See* Ch. 112, sec. 1, § 8-42-107(8)(b), 1996 Colo. Sess. Laws 456, 456–57. Thus, section 8-42-107(8)(b)(II) now provides that if "either party" disputes the ATP's determination of "whether the injured worker *has or has not* reached [MMI]," a DIME doctor may be selected in accordance with section 8-42-107.2, C.R.S. (2019). (Emphasis added.) But importantly, the employer or insurer may request a DIME only if four conditions are met: (1) at least twenty-four months have passed since the date of injury;[3] (2) a party has requested an MMI determination from the ATP; (3) the ATP "*has not* determined that the employee has reached [MMI]"; and (4) a third-party physician other than the ATP has determined that the claimant reached MMI. § 8-42-107(8)(b)(II) (emphasis added).

¶70 Notably, under this scheme, the employer-retained third-party physician's examination serves only as a necessary threshold requirement to trigger the DIME process. It does not supplant that process.

¶71 Under section 8-42-107(8)(c), if the ATP has determined that a claimant has reached MMI and determines that the injury has resulted in permanent medical

---

[3] In 2013, the time an employer must wait to request a DIME was extended from eighteen to twenty-four months. Ch. 301, sec. 6, § 8-42-107(8)(b), 2013 Colo. Sess. Laws 1593, 1595.

impairment, "the authorized treating physician shall determine a medical impairment rating." Alternatively, under section 8-42-107(8)(b)(III), if instead the DIME physician "finds that the injured worker *has* reached [MMI]" through the DIME process under subsection (8)(b)(II), the DIME physician "shall also determine the [claimant's] permanent medical impairment rating." § 8-42-107(8)(b)(III) (emphasis added).

¶72 Subsection (8)(b)(III) goes on to state, "*The finding regarding maximum medical improvement and permanent medical impairment* of an independent medical examiner in a dispute arising under subparagraph (II) of this paragraph (b) may be overcome only by clear and convincing evidence." *Id.* (emphasis added).

¶73 Viewed in the context of section -107(8) as a whole, this quoted language from subsection (8)(b)(III) allows a *claimant* to seek to overcome a DIME physician's finding of MMI and permanent medical impairment by clear and convincing evidence. As described above, subsection (8)(b) is careful to set forth when an ATP or a DIME physician determines that a claimant "has or has not" reached MMI. On its face, subsection (8)(b)(III) addresses only the situation where a DIME physician "finds that the injured worker *has* reached [MMI]." (Emphasis added.) Thus, it is the DIME physician's "finding regarding [MMI] and permanent medical impairment" that may be "overcome" by clear and convincing evidence.

10

## B. The Act Does Not Authorize the ALJ to Find MMI Based Solely on the Opinion of an Employer-Hired Third-Party Physician

¶74 I believe the majority errs by interpreting section 8-42-107(8)(b)(III) to hand employers yet a third bite at the MMI apple by construing that provision to allow an ALJ to find that a claimant has reached MMI when both the ATP and the DIME physician have concluded otherwise. Certainly nothing in section 8-42-107(8)(b)(III) authorizes the ALJ to make such a finding based solely on the opinion of an employer-hired third-party physician. Rather than generally "inject[ing]" the third-party physician's opinion into the DIME process, maj. op. ¶ 28, the statute plainly limits the third-party physician's evaluation of the claimant to functioning as a necessary threshold requirement to trigger the DIME process,[4] § 8-42-107(8)(b)(II)(D). As noted above, it in no way substitutes for the DIME itself. The majority's interpretation, however, improperly elevates the third-party physician's MMI finding and equates it with the statutory role of the ATP or DIME physician's conclusion.

¶75 The majority reasons that its interpretation avoids rendering provisions of the statute without practical effect. Maj. op. ¶ 38. But the provision allows an

---

[4] The DIME then has that third-party physician's report available to her when she makes her MMI determination.

employee to challenge a DIME physician's determination that a claimant has reached MMI. Thus, the provision continues to have important, practical application where the ATP and DIME physician do not agree. And as the court of appeals observed, even when the ATP and DIME physician agree a claimant has not reached MMI, nothing precludes the employer from reinvoking the DIME process. However, I am unwilling to read into the statute a remedy that the legislature did not provide for the relatively rare situation where both an employer-selected ATP and a DIME physician agree that a claimant has not reached MMI.

¶76 Finally, to the extent the majority relies on the nonbinding ICAO opinion in *McFadden v. Sun Health Care*, W.C. No. 4-710-119, 2011 WL 737114 (Colo. I.C.A.O. Feb. 25, 2011), to support its interpretation of the Act, its deference to that opinion is troubling. Maj. op. ¶¶ 30–33. Although we may defer to an agency's reasonable interpretation of its own statute, *Kunau*, 147 P.3d at 38, the panel ruling in *McFadden* engaged in no statutory "interpretation" justifying this court's deference. *Cf. Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("The weight of deference afforded to agency interpretations . . . depends upon 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140

(1944))). Thus, I disagree that *McFadden* supports the majority's reading of the statute.

## C. The Record Does Not Support the June 2016 MMI Date

¶77 Although I disagree with the majority's statutory interpretation, I also note that the June 28, 2016 MMI date is simply not supported by the record. As set out above, the ICAO panel concluded that the ALJ had found Burren was at MMI as of June 28, 2016, for *all* of her work-related injuries based on the opinions of Dr. Fall and the ATP, even though the ATP placed Burren at MMI as of June 28, 2016, for her cervical spine injury only; the ALJ's order finds MMI only with respect to Burren's cervical spine injury, not all her injuries; *no doctor* opined that Burren reached MMI as of June 28, 2016, for her shoulder and arm injuries; and Dr. Fall did not place Burren at MMI for her injuries until August 9, 2016.

¶78 The majority sidesteps this issue by reasoning that these factual questions are not within the scope of our certiorari review. Maj. op. ¶¶ 16–17 nn.1–2. I disagree. The question in this case is whether the ALJ has the authority to find a claimant at MMI where no ATP or DIME physician found the claimant at MMI. But here, the ALJ's order found the claimant at MMI as of June 2016 only for her cervical spine injury, based on the ATP's conclusion that Burren had reached MMI as of June 2016 only for the cervical spine injury. In my view, the ICAO panel erroneously construed the ALJ's order to mean more than it said and arrived at an

13

MMI date that is simply unsupported by the record or the ALJ's findings and order.[5]

## III. Permanent Impairment Rating

¶79 Because I conclude that the ALJ could not find Burren had reached MMI based on a third-party physician's opinion, I need not reach the issue of the permanent impairment rating. § 8-42-107(8)(c). Nonetheless, I briefly lay out my concerns with the majority's permanent impairment rating analysis.

¶80 First, the majority relies on sections 8-42-107(8)(c) and 8-42-101(3.6)(b), C.R.S. (2019), to reason that because Dr. Fall was a level-II physician, she was authorized to find a permanent impairment rating for Burren. Maj. op. ¶ 41. However, that Dr. Fall was qualified to make such a finding does not mean she was acting in the proper capacity to make such a finding in this case, and, as the majority notes, "Dr. Fall served as neither an ATP nor a twenty-four-month DIME doctor in this case." *Id.* Instead, much like with the MMI finding, the statute authorizes an ATP or DIME physician to determine a permanent impairment rating. § 8-42-107(8)(c) ("When the injured employee's date of maximum medical

---

[5] Although Burren did not challenge whether the record supported the ALJ's MMI finding in her briefing to this court, she had no reason to petition for certiorari review on that issue because she was the prevailing party at the court of appeals and, because the division agreed with her statutory interpretation, it did not reach whether substantial evidence supported the ALJ's findings of fact. *Burren*, ¶ 20.

improvement has been determined . . . the authorized treating physician shall determine a medical impairment rating as a percentage of the whole person . . . ."); -107(8)(b)(III) ("[I]f the independent medical examiner selected pursuant to subparagraph (II) of this paragraph (b) finds that the injured worker has reached maximum medical improvement, the independent medical examiner shall also determine the injured worker's permanent medical impairment rating.").

¶81 Second, the majority appears to blame Burren for the shortcomings in the DIME physician's report. The DIME physician did fail to issue a provisional permanent impairment rating. But such a rating is merely recommended; it is not required by statute. Colo. Dep't of Labor & Emp't, Div. of Workers' Compensation Desk Aid #11—Impairment Rating Tips: DIME Panel Physician Notes, 14 ("If the party requesting the DIME has asked that impairment be addressed, and if you find the patient not at MMI for that work-related injury, you *should* nevertheless provide a rating for that injury." (original emphases omitted, emphasis added)). The majority implies that Burren should be faulted because she failed to request that the DIME provide such a rating. Maj. op. ¶¶ 44–45. Yet Destination Maternity requested the DIME and wanted a finding on permanent impairment; thus, I see no reason to hold Burren responsible for the DIME doctor's failure to issue a

15

provisional rating.[6]  I worry the majority's opinion today disadvantages claimants who fail to seek their own expert to testify at any hearing where the employer challenges the ATP and DIME physician's opinions that the claimant has not reached MMI.  Imposing such a disadvantage on claimants who fail to seek their own experts undermines the purpose of the statute to avoid litigation.  *See* § 8-40-102(1).

## IV.  Conclusion

¶82      Because I disagree with the majority's statutory interpretation, and because the MMI date is unsupported by the record in this case, I respectfully dissent.

---

[6] Burren also argues she lacked adequate notice that permanent impairment would be decided at the hearing.  Maj. op. ¶ 46 n.9.  This too may explain why Burren might not have followed up with the DIME about a provisional permanent impairment rating.

16